72 P.3d 735 (2003)
149 Wash.2d 775
STATE of Washington, Respondent,
v.
Nathaniel E. TILTON, Petitioner.
No. 72688-4.
Supreme Court of Washington, En Banc.
Argued February 11, 2003.
Decided July 10, 2003.
*736 Nina Hodgson, Nathaniel Tilton, Bellingham, Nielsen, Broman & Assoc., Eric Nielsen, David Koch, Seattle, for petitioner.
David S. McEachran, Whatcom County Prosecutor, Eric Richey, Deputy, Bellingham, for respondent.
CHAMBERS, J.
Nathaniel E. Tilton, a juvenile, was charged with sexually molesting his younger brother. The younger boy testified that his older brother was asleep, and while sleeping had grabbed the younger boy's "private parts."
At trial the court tape recorder was accidentally not turned on when Tilton began to testify.[1] Consequently, none of Tilton's direct testimony, and only a small portion of his cross-examination, was recorded. Tilton contends he was prejudiced by an incomplete record on review. Tilton asserts that the reconstructed record was not sufficiently complete to enable him to effectively identify and argue issues on appeal, particularly a claim for ineffective assistance of counsel based on his counsel's failure to raise diminished capacity or an intoxication defense. We agree with Tilton and vacate his conviction and remand for a new trial.

FACTS
On February 1, 2000, Tilton, age 15, his brother J.L., age 6, and his sister Jiah, age 5, spent the night at the home of a family friend, Gretchen Titus, who was baby-sitting the children while their parents[2] attended a music concert. Titus's children, Hannah, age 5, and Heidi, age 8, were also in the home. At bedtime, Jiah became upset and began yelling, "I want Nate," referring to Tilton. Report of Proceedings (RP) at 140. Titus asked Tilton to go upstairs and lie down *737 on the mat that Jiah and J.L. were sharing in Hannah's room. Tilton lay down between Jiah and J.L.
Not long after Tilton had gone upstairs, Heidi, who was in an adjoining room, heard J.L. making some "fussing" noises. Report of Pretrial Hr'g at 95. Heidi asked J.L. what was wrong. J.L. told Heidi that "Nate was playing with his privates." RP at 41. Heidi told J.L. to go downstairs and tell her mother. J.L. found Titus and said to her, "Nate keeps touching my private parts.... He is sleeping and I can't wake him up and make him stop." RP at 143. Titus took J.L. back upstairs and told Tilton to go downstairs. When asked if Tilton was asleep or awake when she went upstairs, Titus testified, "He didn't look asleep. He looked maybe just quiet. Kind of relaxed. Like, okay and just lifted up his head, scooted back and it was nothing dramatic." RP at 145. Titus did not say anything to Tilton about J.L.'s complaints. Titus then went downstairs and smoked marijuana with Tilton, which she provided.
The next day Titus told Tilton's and J.L.'s parents. They questioned Tilton, who said that he did not remember any such incident from the night before. He admitted to them that he may have been asleep and that he had been under the influence of marijuana. Tilton apologized to J.L. saying, "If I did this to you I'm really sorry. I don't remember." RP at 240. The parents believed the incident was inadvertent. Titus reported the incident to the police.
At a bench trial before a court commissioner, J.L. testified that Tilton was asleep when the incident occurred and that he believed Tilton was talking in his sleep.
When Tilton began his testimony, the court reporter forgot to turn on the tape recorder which was being used to record the proceedings. The tape recorder was turned on again 36 minutes later, near the end of Tilton's cross-examination. Although we do not have a verbatim transcript of Tilton's testimony, it appears from the commissioner's oral ruling and affidavit that Tilton testified that he smoked marijuana both before and after the alleged incident.
The commissioner found Tilton guilty of molestation in the first degree. Prior to sentencing, Tilton's trial attorney withdrew and another attorney was substituted as counsel. The gap in the record was discovered just prior to sentencing.
At sentencing, a mental health expert, who had been working with Tilton for over a year, testified that Tilton needed drug treatment and indicated that he did not believe Tilton had any problems related to sexual predation. There is also reference at sentencing to a psychiatric expert who examined Tilton and reported Tilton had a history of blackouts from marijuana. Neither of these professionals was called as a witness at trial. Witnesses, who were called at trial, testified that Tilton said he smoked marijuana provided by Titus both before and after he went upstairs to calm down his sister. Tilton contends his attorney's failure to argue diminished capacity or voluntary intoxication was ineffective assistance of counsel.
After sentencing the prosecutor brought a motion in the superior court to reconstruct the missing record. Tilton's counsel was not present and the prosecutor stated he had been unable to locate him. The judge asked the prosecutor if reconstruction of the record was governed by a court rule and the prosecutor responded that it was not. The judge then outlined the following procedure for reconstructing the missing part of the record: he ordered the prosecutor to prepare an affidavit of his recollections of Tilton's testimony, forward it to Tilton's trial counsel, who was to review it and then submit his own affidavit. Both affidavits were to be sent to the court commissioner, who was to prepare his own affidavit, adding or rejecting information. The superior court judge would review the three affidavits and hear motions to resolve any discrepancies.
Tilton's trial attorney indicated in his affidavit that he had no independent recollection of the defendant's testimony and had no notes because he was the one asking questions. He objected to the reconstruction, noting the affidavits were a "poor substitute for a verbatim record of the testimony of a defendant on trial for such a serious offense." Clerk's Papers at 36-37.
*738 On the State's motion, the superior court found that there were no conflicts of consequence in the affidavits, that the affidavits should be allowed to reconstruct the record, and that Tilton was not prejudiced by the failure to record his testimony. Tilton's counsel was not present. The superior court granted the State's motion and adopted the affidavits as the reconstructed record.

ANALYSIS
Tilton argues that the reconstructed record is insufficient for purposes of appellate review.
A criminal defendant is "constitutionally entitled to a `record of sufficient completeness' to permit effective appellate review of his or her claims." State v. Thomas, 70 Wash.App. 296, 298, 852 P.2d 1130 (1993) (quoting Coppedge v. United States, 369 U.S. 438, 446, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962)). "A `record of sufficient completeness' does not translate automatically into a complete verbatim transcript." Mayer v. City of Chicago, 404 U.S. 189, 194, 92 S.Ct. 410, 414, 30 L.Ed.2d 372 (1971) (quoting Coppedge, 369 U.S. at 446, 82 S.Ct. 917, quoted with approval in Thomas, 70 Wash.App. at 299, 852 P.2d 1130). Other methods of reporting trial proceedings may be constitutionally permissible if they permit effective review. An alternative method must allow counsel to determine which issues to raise on appeal, and "`place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise.'" State v. Jackson, 87 Wash.2d 562, 565, 554 P.2d 1347 (1976) (quoting Draper v. Washington, 372 U.S. 487, 495, 83 S.Ct. 774, 9 L.Ed.2d 899 (1962)).
The Washington Rules of Appellate Procedure (RAPs) set forth the form, content, and method of preparing a report of proceedings for appellate review. The rules also establish the procedure for reconstructing a record when the tape recording of the proceedings has been lost.
The RAPs direct the party seeking review to prepare either a narrative report of proceedings under RAP 9.3 or an agreed report of proceedings under RAP 9.4, and file that with the trial court.[3] Objections and proposed amendments to either the narrative report or a verbatim report are filed with the trial court, and the trial judge settles the objections and approves amendments as per RAP 9.5(c) and (d).
Here, the State brought a motion in superior court for reconstruction of the record. The superior court judge ordered a procedure somewhat similar to that set out in the RAPs. Had the parties followed the RAPs, however, the burden of reconstructing the record would have been on the appellant, Tilton. As it was, the State assumed the burden immediately, recommended a procedure, and then encountered significant problems in the reconstruction of the record.[4]
*739 The usual remedy for a defective record is to supplement the record with appropriate affidavits and have discrepancies resolved by the judge that heard the case. RAP 9.3, 9.4, 9.5. However, where the affidavits are unable to produce a record which satisfactorily recounts the events material to the issues on appeal, the appellate court must order a new trial. For example, in State v. Larson, 62 Wash.2d 64, 381 P.2d 120 (1963), this court held that the reconstructed record was insufficient and ordered a new trial. The court reporter's notes from the entire trial were lost and the trial judge prepared a narrative statement of facts based on his notes. Id. at 65, 381 P.2d 120.
This court found the reconstructed record inadequate. The defense attorney, who had not been the attorney at trial, was unable to test the "sufficiency of completeness" of the narrative statement of facts and was unable to satisfactorily determine what errors to assign for review. Id. at 67, 381 P.2d 120. The lack of a sufficient record constituted a denial of due process, and the court reversed the convictions and remanded for a new trial.
The facts of the current case are similar to Larson. Tilton's trial attorney had no notes and no independent recollection of Tilton's testimony. Tilton's current appellate counsel was not present at the trial and so was unable to judge the completeness of the reconstructed record, determine appealable issues or support appealable issues which depended on Tilton's testimony. The portion of the record that is missing is of critical importance to Tilton's appeal. It is impossible using the reconstructed record to establish the elements of an ineffective assistance of counsel claim based on trial counsel's failure to raise voluntary intoxication or diminished capacity as defenses, although there is a significant amount of evidence to suggest the defenses were viable.
Washington applies the two-part Strickland test in determining whether a defendant had constitutionally sufficient representation. State v. Cienfuegos, 144 Wash.2d 222, 226, 25 P.3d 1011 (2001); Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. In this assessment, the appellate court will presume the defendant was properly represented. Cienfuegos, 144 Wash.2d at 227, 25 P.3d 1011. Second, the defendant must show that the deficient performance prejudiced the defense. This showing is made when there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Strickland, 466 U.S. at 687, 104 S.Ct. 2052; State v. Hendrickson, 129 Wash.2d 61, 78, 917 P.2d 563 (1996). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694, 104 S.Ct. 2052. The defendant, however, "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." Strickland, 466 U.S. at 693, 104 S.Ct. 2052; State v. Thomas, 109 Wash.2d 222, 226, 743 P.2d 816 (1987). We look to the facts of the individual case to see if the Strickland test has been met. Cienfuegos, 144 Wash.2d at 228-29, 25 P.3d 1011.
Failure of defense counsel to present a diminished capacity defense where the facts support such a defense has been held to satisfy both prongs of the Strickland test. Thomas, 109 Wash.2d at 226-29, 743 P.2d 816. A diminished capacity defense requires evidence of a mental condition, which prevents the defendant from forming the requisite intent necessary to commit the crime charged. State v. Warden, 133 Wash.2d 559, 564, 947 P.2d 708 (1997). An intoxication defense allows consideration of the effect of voluntary intoxication by alcohol or drugs on the defendant's ability to form the requisite mental state. State v. Coates, 107 Wash.2d 882, 889, 735 P.2d 64 (1987).
In this case, it is undisputed that Tilton smoked marijuana provided by Titus. The commissioner's oral ruling and affidavit indicate that Tilton testified that he smoked marijuana both before and after the alleged *740 incident. In addition, there is testimony at sentencing by a mental health expert who had been working with Tilton for over a year. He stated that Tilton needed drug treatment. There is also reference to a psychiatric expert who examined Tilton and reported that Tilton has a history of blackouts from marijuana. It appears this was never mentioned at trial, even though Tilton's explanation had always been he did not remember what happened.
Tilton's testimony concerning the amount and timing of his marijuana usage and its effects on his mind and body was critical in this case. Without Tilton's testimony on the issue, it is impossible to say whether all the elements of an intoxication defense or a diminished capacity defense would have been met. The necessity of Tilton's testimony on these points highlights the insufficiency of the reconstructed record.
The reconstructed record is not a record of sufficient completeness to effectively determine if a claim for ineffective assistance of counsel for failure to raise an intoxication defense or diminished capacity defense is an appealable issue. Even on this incomplete record, it appears probable that the defenses should have been presented and that a reasonably competent attorney would have raised at least one of them. Confidence in the outcome of the trial is certainly compromised. Therefore, the record is not of sufficient completeness to permit effective appellate review in this particular case.
A new trial will seldom be required when a report of proceedings is not recorded or is lost. In most cases, a reconstructed record will provide the defendant a record of sufficient completeness for effective appellate review. The RAPs set forth a reasonable procedure for recreating the record, which allows the parties and the trial judge latitude to reproduce as accurate a record as possible. As explained by Justice Hill in his concurrence in Larson, a new trial was the only available course in Larson. In most cases an adequate narrative can be constructed by the attorneys, witnesses, jurors, court attaches or anyone present during the trial. Larson, 62 Wash.2d at 68, 381 P.2d 120 (Hill, J., concurring). However, like Larson, this is one of the rare cases where the only available course is to order a new trial.

SUFFICIENCY OF THE EVIDENCE
Tilton also contends there was insufficient evidence to sustain the verdict. Evidence is sufficient if, after reviewing it in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Joy, 121 Wash.2d 333, 338, 851 P.2d 654 (1993) (citing State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980)). By claiming the evidence is insufficient, the defendant admits the truth of the State's evidence and all inferences that can reasonably be drawn from it. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992).
The only element of first degree child molestation at issue is sexual contact for the purpose of sexual gratification. There was evidence that Tilton was asleep. However, there is some testimony which would support an inference he was awake. Further, the court is entitled to draw some inference from J.L.'s testimony that Tilton grabbed J.L.'s private parts. Finally, although there are two versions of the statement, a detective who interviewed J.L. reported that Tilton said, "don't talk to Heidi." RP at 503. Though the evidence is far from strong, the commissioner was entitled to believe the evidence against Tilton.
Taking as true the State's evidence and drawing all reasonable inferences in the State's favor, the evidence supports the trial judge's conclusion that Tilton touched J.L.'s genitals through clothing, and then attempted to conceal the act. Therefore, we are unable to reverse the conviction on the basis of insufficient evidence. We do, however, find that the absence of Tilton's trial testimony and the inability to adequately reconstruct the record, prejudiced Tilton's appellate review.

CONCLUSION
Under the specific facts of this case, reconstruction of the record was not able to produce a record of sufficient completeness to *741 permit effective appellate review. Therefore, we vacate the conviction and remand for a new trial.
ALEXANDER, C.J., and JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, OWENS and FAIRHURST, JJ., concur.
NOTES
[1] The Juvenile Court Rules provide: "All juvenile court proceedings involving a juvenile offense shall be recorded verbatim by means which will provide an accurate record and which can be subsequently reduced to written form." JuCR 10.2(b).
[2] "Parents" refers to Nina Hogsdon, Tilton's mother, and to Paul Laugharn, who lives with Hogsdon. Laugharn is the father of J.L., but he is not the father of Tilton.
[3] RAP 9.3 provides:

The party seeking review may prepare a narrative report of proceedings. A party preparing a narrative report must exercise the party's best efforts to include a fair and accurate statement of the occurrences in and evidence introduced in the trial court material to the issues on review. A narrative report should be in the same form as a verbatim report, as provided in rule 9.2(e) and (f). If any party prepares a verbatim report of proceedings, that report will be used as the report of proceedings for the review. A narrative report of proceedings may be prepared if either the court reporter's notes or the videotape of the proceeding being reviewed are lost or damaged.
RAP 9.4 provides:
The parties may prepare and sign an agreed report of proceedings setting forth only so many of the facts averred and proved or sought to be proved as are essential to the decision of the issues presented for review. The agreed report of proceedings must include only matters which were actually before the trial court. An agreed report of proceedings should be in the same form as a verbatim report, as provided in rule 9.2(e) and (f). An agreed report of proceedings may be prepared if either the court reporter's notes or the videotape of the proceeding being reviewed are lost or damaged.
[4] The State argues that the defendant waived his right to a complete record, citing State v. Miller, 40 Wash.App. 483, 698 P.2d 1123 (1985). In Miller, the defendant claimed the trial record was incomplete because it did not contain the court's response to a jury inquiry during deliberations. The court held the defendant was not prejudiced by the omission and the defendant had waived his right to a complete record by not attempting to reconstruct the record. Miller, 40 Wash.App. at 488, 698 P.2d 1123. Miller is distinguishable because in this case the parties did attempt reconstruction. However, the parties were unable to recreate a sufficiently complete record in this particular case.