**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59171-5-II |
| Respondent, | |
| v. | |
| ANTHONY EUGENE BARNES, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, A.C.J. — Anthony Barnes was convicted of one count of unlawful delivery of methamphetamine [meth] to a minor and one count of rape of a child in the third degree. At trial, Barnes sought to dismiss prospective juror 3 for cause on the basis that she would place her religious beliefs above the law. The trial court denied Barnes's motion. The trial court also denied Barnes's peremptory challenge to remove prospective juror 3.

After Barnes was convicted, it was discovered that the entirety of Barnes's trial, including voir dire, was not recorded. Barnes moved for a new trial, arguing that he could not meaningfully exercise his right to an appeal without a proper record. The trial court denied Barnes's motion and ordered the parties to reconstruct the record which culminated in an agreed report of proceedings (ARP).

Barnes raises two arguments on appeal. First, Barnes argues that the ARP is insufficient to challenge the trial court's denial of his attempts to remove prospective juror 3. Relatedly, Barnes argues that he was deprived of the ability to raise other arguments, such as prosecutorial

misconduct, ineffective assistance of counsel, and improper comments and/or rulings from the court regarding the admissibility of evidence. Second, Ross argues that there is insufficient evidence to support either of his convictions.

We conclude that the ARP was insufficient for Barnes to meaningfully exercise his right to appeal. And because we conclude that the ARP is inadequate, we decline to address Barnes's insufficiency of the evidence claims. Accordingly, we reverse Barnes's convictions and remand for proceedings consistent with this opinion.

FACTS

I. BACKGROUND

T.R., born on May 22, 1997, lived with her mom, and younger sister, E.R. In June 2011, their home burned down. With nowhere else to go, T.R. and her family "camped out for about a month," and then they lived in "a homeless shelter for 3-4 months." Clerk's Papers (CP) at 171. T.R.'s mother had previously suffered a back injury and had become addicted to opiates. Because of this, T.R., E.R., and their mother were kicked out of the shelter.

Sometime during this period, T.R. met Barnes.[1] T.R.'s mother had an existing relationship with Barnes. While at T.R.'s friend's house in 2011, Barnes and T.R.'s friend, Ronnie, "convinced [T.R., who was 14 at the time,] to try . . . meth." CP at 161. According to T.R., she "smoked meth every single day after meeting [Barnes] and until the day that she left him" on May 6, 2016, when she was 18 years old. CP at 161.

Barnes lived at an auto wrecking yard on Harstine Island that he operated. T.R.'s grandmother testified that T.R., E.R., and their mother moved in with Barnes around September

---

[1] Barnes was born on April 11, 1970, so there was approximately a 27-year age gap between T.R. and Barnes.

or October 2011. Barnes testified that T.R.'s family moved in on September 2012, and T.R. moved in "about four months later." CP at 175.

T.R.'s mother and E.R. moved out after about 2-3 months. T.R. slept in Barnes's bed and would take showers with him. T.R. and Barnes had sexual intercourse on numerous occasions. They would also "watch[] porn and smoke[] meth." CP at 162. T.R. and Barnes would have unprotected sexual intercourse, and T.R. was not on birth control. T.R. later told the police that "she and [Barnes] had sex[ual intercourse] from the time [that T.R.] was 14 until she turned 18." CP at 165. T.R. later testified that "nobody ever saw her and [Barnes] having sex[ual intercourse], and she never told anybody else that they were having sex." CP at 165.

Eventually, T.R. moved out in 2016 when she was 18. T.R. then went to the police. In 2017, Barnes was charged with three counts of rape of a child in the third degree and one count of unlawful delivery of methamphetamine to a minor.

Barnes later admitted that he had sexual intercourse with T.R., but he claimed that this occurred around August or September in 2013, six months after T.R. had moved in. T.R. turned 16 on May 22, 2013. Barnes also acknowledged that they were "[n]ever . . . boyfriend and girlfriend." CP at 176.

II.    BARNES'S TRIAL

Barnes's case went to trial on May 3, 2023.[2] The jury returned a guilty verdict for one count of rape of a child in the third degree and one count of delivery of methamphetamine to a minor. The jury found Barnes not guilty for the remaining counts.

---

[2] Barnes waived his right to a speedy trial. And there were several delays in his trial due to issues with his assigned counsel and the COVID-19 pandemic.

3

The entirety of Barnes's trial was not recorded or transcribed. Prior to being sentenced, Barnes moved for a new trial. In Barnes's motion, Barnes highlighted the difficulty of reconstructing a record in this case. Barnes further identified potential issues with a reconstructed record regarding his objections to allowing prospective juror 3 to be empaneled. Barnes also explained that a reconstructed record was "less likely to preserve . . . unnoticed errors." CP at 203. The court denied the motion and ordered the parties to "re-create the record." CP at 81.

Ross was sentenced to 68 months in confinement before the parties created the ARP.

III.    THE ARP

The parties completed the ARP on January 29, 2025, approximately 20 months after the start of Barnes's trial. Defense counsel agreed that the ARP "accurately reflect[ed] the record." CP at 182. The ARP consisted of a 38-page document that relied, in part, on the trial court's notes that were taken throughout trial.

The first 15 pages of the ARP focused on voir dire. The ARP indicated prospective juror 3 was on the trial court's "GR 37 Watch List." CP at 146. The court's notes on prospective juror number 3 are as follows:

> Her "personal conscience" is a hardship. Big believer in the Bible; wants to be fair according to the Bible. Would put her religious beliefs above the law if she had to make a choice. Defense challenge for cause was denied sua sponte by the judge per GR 37 (the State took no position) on the grounds that #3 was a cognizable minority (Hispanic female). Also, the judge recalled #3 to say that she would follow the law. Became Juror No. 2.

CP at 146.

The ARP later discussed that Barnes "moved to excuse [prospective juror 3] for cause" on the grounds "the member would place religious belief above the law." CP at 159. The trial court denied Barnes's motion, noting "that [prospective juror 3] gave consistent answers to voir dire questions, did struggle, but would follow the law." CP at 159.

4

The ARP also showed that Barnes "moved to exercise a peremptory challenge to strike" prospective juror 3. CP at 159-60. The trial court again denied Barnes's "challenge, citing GR 37, noting that the challenge for cause had already been denied and that there were no additional grounds to strike [the] juror." CP at 160.

The remaining 21 pages consisted of a summary of opening statements, the testimony and evidence presented at trial, and closing arguments. Some portions of the ARP were brief. For example, the State's opening statement was summarized in one sentence.

During the State's case-in-chief, it was noted that defense counsel objected to the admission of T.R.'s medical records, but the ARP did not explain the basis for the objection, nor did it explain the court's reasoning for overruling the objection. No objections were noted during opening statements, the trial court's colloquy with the parties regarding jury instructions, or closing arguments.

The ARP dedicated only three sentences to the State's closing statement and rebuttal.

Barnes appeals his conviction. It is important to note that Barnes's appellate counsel is different from trial counsel on appeal.

ANALYSIS

I. THE ARP WAS INSUFFICIENT FOR BARNES TO MEANINGFULLY EXERCISE HIS RIGHT TO AN APPEAL

Barnes argues that the ARP does not allow him to meaningfully exercise his right to an appeal, thereby violating his right to due process. More specifically, Barnes asserts that the ARP prevents him from challenging the trial court's denial of his for cause motion and peremptory challenge regarding prospective juror 3. Additionally, Barnes argues that the ARP prevents appellate counsel from determining "whether there is a basis to raise potential meritorious issues such as ineffective assistance of . . . counsel, prosecutorial misconduct, improper judicial comment

5

on the evidence or improper rulings on admissibility of evidence by the trial court." Br. of Appellant at 25.

The State argues that the trial court did not err in allowing prospective juror 3 to become a member of the jury. The State also claims that because Barnes cannot identify any other issue that occurred at trial, the record is sufficient. We agree with Barnes on both fronts.[3]

A.      Legal Principles

A criminal defendant has the right to appeal under article 1, section 22 of the Washington State Constitution. "In order to pursue an effective appeal, a criminal defendant is 'constitutionally entitled to a record of sufficient completeness.' *State v. Waits*, 200 Wn.2d 507, 513, 520 P.3d 49 (2022) (internal quotation marks omitted) (quoting *State v. Tilton*, 149 Wn.2d 775, 781, 72 P.3d 735 (2003)). And under the Fourteenth Amendment, indigent defendants have the right to a verbatim transcript for appellate review. *Draper v. Washington*, 372 U.S. 487, 488, 83 S. Ct. 774, 9 L. Ed. 2d 899 (1963); U.S. CONST. amend XIV.

But the right to "'[a] record of sufficient completeness does not translate automatically into a complete verbatim transcript.'" *Tilton*, 149 Wn.2d at 781 (internal quotation marks omitted) (quoting *Mayer v. City of Chicago*, 404 U.S. 189, 194, 92 S. Ct. 410, 30 L. Ed. 2d 372 (1971)). Instead, "[o]ther methods of reporting trial proceedings may be constitutionally permissible if they permit effective review." *Tilton*, 149 Wn.2d at 781. An alternative method, however, "*must allow counsel to determine which issues to raise on appeal*, and 'place before the appellate court an

---

[3] The State appears to suggest that Barnes waived this issue on appeal because trial counsel agreed to the ARP and did not object pursuant to RAP 9.5(c). It is true that defense counsel agreed that the ARP "accurately reflect[ed] the record" for Barnes's trial. CP at 182. Defense counsel also failed to object under RAP 9.5(c). This does not impact our analysis because we review the sufficiency of a reconstructed record for the first time on appeal. Moreover, we may "waive or alter the provisions of any of [the RAPs] in order to serve the ends of justice." RAP 1.2(c).

equivalent report of the events at trial from which the appellant's contentions arise.'" *Id.* (emphasis added) (internal quotation marks omitted) (quoting *State v. Jackson*, 87 Wn.2d 562, 565, 554 P.2d 1347 (1976)); *Waits*, 200 Wn.2d at 513-14.

Alternatives may include "[a] statement of facts agreed to by both sides, a full narrative statement based . . . on the trial [court's] minutes taken during trial or on the court reporter's untranscribed notes, or a bystander's bill of exceptions." *Draper*, 372 U.S. at 495; *Waits*, 200 Wn.2d at 514. RAP 9.3[4] and RAP 9.4[5] provide the method by which parties may recreate defective or missing portions of a verbatim transcript.

"[W]hen a defendant appeals their conviction and the record is lost or damaged, the State bears the burden of reconstructing the record." *Waits*, 200 Wn.2d at 519-20. The State also has the "burden of showing that alternatives will suffice." *Id.* at 514. "A new trial will seldom be

---

[4] RAP 9.3 provides:

> The party seeking review may prepare a narrative report of proceedings. A party preparing a narrative report must exercise the party's best efforts to include a fair and accurate statement of the occurrences in and evidence introduced in the trial court material to the issues on review. A narrative report should be in the same form as a verbatim report, as provided in rule 9.2(e) and (f). If any party prepares a verbatim report of proceedings, that report will be used as the report of proceedings for the review. A narrative report of proceedings may be prepared if the court reporter's notes or the electronic recording of the proceeding being reviewed is lost or damaged.

[5] RAP 9.4 provides:

> The parties may prepare and sign an agreed report of proceedings setting forth only so many of the facts averred and proved or sought to be proved as are essential to the decision of the issues presented for review. The agreed report of proceedings must include only matters which were actually before the trial court. An agreed report of proceedings should be in the same form as a verbatim report, as provided in rule 9.2(e) and (f). An agreed report of proceedings may be prepared if the court reporter's notes or the electronic recording of the proceeding being reviewed is lost or damaged.

required when a report of proceedings is not recorded or is lost." *Tilton*, 149 Wn.2d at 785. This is so because "[i]n most cases, a reconstructed record will provide the defendant a record of sufficient completeness for effective appellate review." *Id.* But when the reconstructed record is "unable to produce a record which satisfactorily recounts the events material to the issues on appeal, the appellate court must order a new trial." *Id.* at 783.

When reviewing a reconstructed record, we consider: "(1) whether all or only part of the trial record is missing or reconstructed, (2) the importance of the missing portion to review the issues raised on appeal, (3) the adequacy of the reconstructed record to permit appellate review, and (4) the degree of resultant prejudice from the missing or reconstructed record, if any, to the defendant." *State v. Classen*, 143 Wn. App. 45, 57, 176 P.3d 582 (2008).

In *Classen*, the defendant was convicted of murder in the first degree. It was only discovered "[a]fter the jury's verdict . . . that, due to a technical error, the audio feed for the courtroom video camera had not been recording for three days of trial." *Id.* at 53 (footnote omitted). The parties reconstructed the record pursuant to RAP 9.4 relying on "notes and recollections of the clerk, the bailiff, both parties, and intermittent footage of courtroom proceedings produced by the news media." *Id.* at 53-54. Classen moved for a new trial based, in part, on an alleged "insufficiency of the record for appellate review." *Id.* at 54. The trial court denied Classen's motion, and he appealed his conviction. *See id.*

This court concluded that the reconstructed record was sufficient for appellate review. *Id.* at 54, 58. We reasoned that the potential prejudice from the missing "3 days of audio" was minimal because the parties were able to reconstruct the record using sources that were highly reliable. *Id.* at 57-58. For instance, 1½ days of the missing audio was reconstructed using "news media video footage" that, "according to the trial court, was of higher quality than the court's own recordings."

*Id.* at 57. And the parties also relied on their "notes and memories" from trial, which had only happened one week prior. *See id.* ("[U]nder the trial court's discretion, the parties were able to reconstruct the remainder of the missing record from the attorneys' notes and memories one week after the testimony." (Footnote omitted.)).

We also recognized that "[b]oth parties signed the . . . [ARP] under RAP 2.4, attesting that the reconstructed record was accurate 'to the best of [their] knowledge.'" *Id.* at 58 (third alteration in the original). Classen's trial counsel did declare that "he could not certify the reconstruction was accurate and complete." *Id.* Nevertheless, we concluded this did not have any impact on Classen's appeal because Classen could not identify any material facts that were omitted in the ARP, and he also failed to specify "how the record diminish[ed] his ability to raise, and [the court's] ability to consider, his issues on appeal." *Id.* Therefore, Classen could not demonstrate resulting "prejudice as a result of the reconstructed narrative report of proceedings." *Id.*

B. Prospective Juror 3

Here, all four factors support that the ARP was insufficient with respect to prospective juror 3. Each will be discussed in turn.

1. Whether All or Only Part of the Trial Record is Missing or Reconstructed

First, the entirety of Barnes's trial, a multi-day proceeding, was unrecorded. As a result, the present case is most similar to *State v. Larson*, 62 Wn.2d 64, 381 P.2d 120 (1963). There, the defendant was convicted of attempted burglary. *Id.* at 64-65. And "it was later determined that the court reporter's notes of the court proceedings . . . had been lost and that a verbatim statement of facts could not be furnished." *Id.* at 65. Our Supreme Court concluded that Larson was entitled to a "verbatim record of the trial court proceedings," and if that could not be provided, a new trial. *Id.* at 67. The court reasoned that "[s]ince counsel representing the defendant on appeal did not

9

represent the defendant at the trial, he was unable to determine satisfactorily what errors to assign for the purpose of obtaining an adequate review on appeal." *Id.*

The extent of the missing record in this case is almost unprecedented and weighs in favor of finding that the ARP is insufficient.[6, 7]

> ### 2. The Importance of the Missing Portion to Review the Issues Raised on Appeal

There are specific portions of Barnes's trial that are critical to our review. This case is similar to *Tilton* where our Supreme Court considered a missing portion of the defendant's testimony. 149 Wn.2d at 782-85. At trial, "the court reporter forgot to turn on the tape recorder which was being used to record the proceedings." *Id.* at 779. The recording device was turned on 36 minutes into the defendant's testimony. *Id.* This issue was discovered prior to sentencing, but

---

[6] Except for *Larson*, no other criminal case decided in the State of Washington has contemplated the sufficiency of a reconstructed record when the *entirety* of the verbatim transcript and/or recording of the trial proceedings below is missing. *Larson*, 62 Wn.2d at 64-65; *State v. Miller*, 40 Wn. App. 483, 486, 698 P.2d 1123 (1985) (trial court's response to a jury inquiry); *State v. Putman*, 65 Wn. App. 606, 609-11, 829 P.2d 787 (1992) (suppression hearing and closing arguments); *Tilton*, 149 Wn.2d at 779, 781-86 (36 minutes of the defendant's testimony related to an affirmative defense); *State v. Clinkenbeard*, 130 Wn. App. 552, 571, 123 P.3d 872 (2005) (portions of evidentiary rulings at trial); *Classen*, 143 Wn. App. at 53 (three days of trial); *State v. Johnson*, 147 Wn. App. 276, 282, 194 P.3d 1009 (2008) (3,000-page verbatim report of proceedings that had numerous "inaudible" or "unintelligible" responses); *State v. Burton*, 165 Wn. App. 866, 874-75, 884, 269 P.3d 337 (2012) (trial transcript that had "hundreds of typographical and stenographical errors" that were supplemented with a "14-page affidavit" by the State); *Waits*, 200 Wn.2d at 511 (verbatim report of proceedings that contained "about 1,500 inaudibles").

[7] Other cases have considered whether the defendant was entitled to a verbatim transcript of trial proceedings, not the sufficiency of the reconstructed report of proceedings for appeal. *State v. Keller*, 65 Wn.2d 907, 909, 400 P.2d 370 (1965) (closing arguments); *State v. Jackson*, 87 Wn.2d 562, 567, 554 P.2d 1347 (1976) (portions of transcript from trial); *State v. Young*, 70 Wn. App. 528, 531, 856 P.2d 399 (1993) (portions of trial); *State v. Thomas*, 70 Wn. App. 296, 302, 852 P.2d 1130 (1993) (closing argument and sentencing); *State v. Osman*, 147 Wn. App. 867, 874-75, 197 P.3d 1198 (2008) ("portion[s] of the electronic record from the pretrial CrRLJ 3.5 and CrRLJ 3.6 hearing").

10

"Tilton's trial attorney withdrew and another attorney substituted as counsel." *Id.* at 780. Our Supreme Court reversed Tilton's conviction. *Id.* at 785. The court reasoned that the missing portion of Tilton's trial was of "critical importance to Tilton's appeal" as it pertained to an affirmative defense. *Id.* at 783.

Here, Barnes assigned error, in part, to the trial court allowing prospective juror 3 to become an empaneled member of the jury, despite Barnes's efforts to have them dismissed. As discussed below, issues regarding for-cause and peremptory challenges often turn on the precise language of an attorney's questions and a prospective juror's answers, which is unavailable here. *Waits*, 200 Wn.2d at 522 n.8. Consequently, the missing portion of the proceedings, like *Tilton*, concerns the issue before us, and further weighs in favor of finding that the ARP was insufficient. *Tilton*, 149 Wn.2d at 782-85.

### 3. The Adequacy of the Reconstructed Record to Permit Appellate Review

Third, the reconstructed record does not adequately convey the events of Barnes's trial, especially with respect to issues related to prospective juror 3. The State maintains that the trial court did not err in denying Barnes's for cause motion or his peremptory challenge, referencing the court found "that [prospective juror 3] 'gave consistent answers to voir dire questions, did struggle, but would follow the law.'" Br. of Resp't at 9-11 (quoting CP at 159). The State misses the point.

"A 'for-cause-challenge' is one based on a juror's individual qualifications for service." *State v. Teninty*, 17 Wn. App. 2d 957, 962, 489 P.3d 679 (2021); RCW 4.44.150; CrR 6.4(c)). "A juror's actual bias can serve as a reason for a for-cause challenge." *Teninty*, 17 Wn. App. 2d at 962. For a court to grant such a motion, it "must be satisfied that the juror cannot disregard preexisting opinions and try the case impartially." *Id.* A peremptory challenge, in contrast, can

"be applied to prospective jurors who have not been excluded for cause." *Id.* "'A peremptory challenge is an objection to a juror for which there is no reason given, but upon which the court shall exclude.'" *Id.* (quoting CrR 6.4(e)).

Peremptory challenges are governed by GR 37. Under GR 37(c), "[a] party may object to the use of a peremptory challenge to raise the issue of improper bias." When an objection is raised, "the party exercising the peremptory challenge shall articulate the reasons" for their challenge. GR 37(d). Then, "[t]he court shall . . . evaluate the reasons to justify the peremptory challenge in light of the totality of the circumstances," and determine whether "an objective observer could view race or ethnicity as a factor in the use of the peremptory challenge." GR 37(e).

Here, the ARP shows that the court denied Barnes's for-cause motion on the grounds of GR 37, which focuses only on peremptory challenges. *See Teninty*, 17 Wn. App. 2d at 962-63. But the ARP is devoid of any discussion required by GR 37; specifically, there is no discussion about the trial court evaluating Barnes's reasons for exercising a peremptory challenge on prospective juror 3 in light of the totality of the circumstances, nor is there any discussion relating to whether an objective observer could view race or ethnicity as a basis for Barnes's peremptory challenge against prospective juror 3. The ARP merely states that the trial court denied Barnes's peremptory challenge under GR 37 and noted that a challenge for cause had already been denied and there was no additional ground provided to strike prospective juror 3. CP at 160 ("The court denied the peremptory challenge, citing GR 37, noting that the challenge for cause had already been denied and that there were no additional grounds to strike" prospective juror 3.).

In *Waits*, our Supreme Court, albeit in dicta, expressed skepticism about the ability of a reconstructed report to accurately convey all relevant information for a GR 37 analysis. 200 Wn.2d at 522 n.8. Referencing *State v. Tesfasilasye*, 200 Wn.2d 345, 518 P.3d 193 (2022), the court in

*Waits* noted that the examination of the record to resolve *Tesfasilasye* "involved a granular examination of juror statements for which a transcript was critically important." *Waits*, 200 Wn.2d at 522 n.8. As such, the court opined that it was "hard to imagine that a narrative or agreed report would be sufficient to allow" review of a trial court's decision regarding a peremptory challenge and its application of GR 37. *Id.*

We agree with the sentiment articulated in *Waits*. To affirm the denial of Barnes's for-cause motion and his peremptory challenge would require us to take the ARP at face value. The ARP consists only of short, conclusory observations, that we have no way of verifying. Evaluation of the trial court's decision on the for-cause and peremptory challenges would require a granular examination of attorney questions, responding juror statements, and the court's analysis—an examination that is impossible on this record. This factor also weighs in favor of finding that the ARP was insufficient.

> 4. The Degree of Resultant Prejudice from the Missing or Reconstructed Record, if Any, to the Defendant

Finally, Barnes is prejudiced. Courts have previously held that a prospective juror's religious convictions may be a basis for removal. *E.g.*, *State v. Elmore*, 139 Wn.2d 250, 278-79, 985 P.2d 289 (1999). And a trial court's misapplication of GR 37 warrants reversal. *See State v. Lahman*, 17 Wn. App. 2d 925, 938, 488 P.2d 881 (2021). We cannot assess these issues, each of which could result in reversal of Barnes's convictions, due to the insufficient nature of the ARP. The prejudice to Barnes is evident and weighs in favor of finding that the ARP was insufficient.

Therefore, we conclude that the ARP was insufficient regarding the denial of Barnes's challenges to prospective juror 3.[8]

---

[8] Because we conclude that the ARP was insufficient to review Barnes's assignment of error regarding prospective juror 3, we need not address the merits of the issue.

C.        Unidentified Issues for Appeal[9]

As previously discussed, it has been a longstanding principle that a reconstructed record must allow appellate counsel to determine what potential errors may be pursued on appeal. *Larson*, 62 Wn.2d at 67; *Tilton*, 149 Wn.2d at 781 ("An alternative method must allow counsel to determine which issues to raise on appeal."). In light of this maxim, we have reviewed the ARP and conclude that, like the issue regarding prospective juror 3, the ARP similarly fails to advise Barnes of other potential issues he could have raised on appeal.

Again, the entirety of Barnes's trial was unrecorded. And without more detail in the ARP, it is impossible to know what issues Barnes could pursue that are meritorious. The ARP is remarkably brief at critical stages of trial. For example, there were other prospective jurors on the trial court's "GR 37 Watch List," but there was little to no information why the court flagged these individuals, some of which were empaneled. CP at 148-52 (prospective jurors 12, 17, 30, 44, and 47). The jury instruction colloquy between the court and the parties simply stated, "Parties discuss jury instructions." CP at 177. Similarly, the ARP dedicated only two sentences to the State's closing argument and only stated that the State gave a rebuttal closing argument.

Cases following *Larson* have expressed skepticism regarding potential prejudice of unidentified issues. *State v. Putman*, 65 Wn. App. 606, 610-11, 829 P.2d 787 (1992); *State v. Burton*, 165 Wn. App. 866, 883-84, 269 P.3d 337 (2012).

In *Putman*, Division Two of this court considered a lack of verbatim transcripts at both a pre-trial suppression hearing and closing argument. 65 Wn. App. at 610-11. Putman argued that

---

[9] As a reminder, Barnes argues that the ARP prevents appellate counsel from determining "whether there is a basis to raise potential meritorious issues such as ineffective assistance of . . . counsel, prosecutorial misconduct, improper judicial comment on the evidence or improper rulings on admissibility of evidence by the trial court." Br. of Appellant at 25.

14

"the lack of verbatim and narrative report of proceedings of the closing arguments prevent[ed] him from determining and demonstrating prejudice from prosecutorial misconduct and ineffective assistance of counsel." *Id.* at 610. We disagreed, explaining that "it seem[ed] likely that no prejudicial prosecutorial misconduct occurred because Putman's trial counsel probably would have remembered it." *Id.* at 611.

And in *Burton*, Division Three of this court considered the adequacy of a transcript that contained "hundreds of typographical and stenographical errors." 165 Wn. App. at 874. The State subsequently filed a 14-page affidavit to supplement the transcript. *Id.* at 875. Burton argued that "the record [was] insufficient to review her claims of prosecutorial misconduct and ineffective assistance of counsel," but the court disagreed. *Id.* at 883. The court in *Burton* emphasized that "no part of the record was lost," and "Burton's prosecutorial misconduct and . . . ineffective assistance [of counsel] claims rel[ied] on portions of the transcript that [were] flawed but sufficiently understandable." *Id.* at 885.

But this case is distinguishable from *Putman* and *Burton*. First, the record not only deprives Barnes of the ability to argue ineffective assistance of counsel or prosecutorial misconduct, but it limits his ability to challenge evidentiary rulings by the trial court. During the State's case, defense counsel objected to the admission of T.R.'s medical records, but the ARP did not explain the basis for the objection, nor did it explain the court's reasoning for overruling the objection. Without more detail, there is no ability for Barnes to challenge the admission of such evidence or evaluate the potential prejudice such information may have had at trial.

Second, the entirety of Barnes's record is missing, whereas in both *Putman* and *Burton*, mere *portions* of the record were absent or unintelligible. 65 Wn. App. at 610-11; 165 Wn. App. at 883-84. Moreover, there was approximately 20 months between the start of Barnes's trial and

15

the completion of the ARP. As such, the case before us is a magnitude higher than *Putman* and *Burton*.

At the core, the ARP suffers from brevity and the lack of detail, rendering it void of details required to give full review of any issues. While this may be due to the fact it was constructed approximately two years after trial, we nevertheless are required to assess whether it is sufficient to permit review. It is not.

Like *Larson* and *Tilton*, Barnes's appellate counsel is different from trial counsel. 62 Wn.2d at 65; 149 Wn.2d at 783. This further supports the prejudice born by Barnes because appellate counsel is not intimately familiar with the proceedings that took place below. Requiring them to represent Barnes in this appeal under this record simply poses too much of a burden.

Therefore, we conclude that the ARP is also insufficient for Barnes to appeal other potential issues.

## CONCLUSION[10]

"A new trial will seldom be required when a report of proceedings is not recorded or is lost." *Tilton*, 149 Wn.2d at 785. But as in *Larson* and *Tilton*, Barnes's case "is one of the rare [instances] where the only available course is to order a new trial." *Tilton*, 149 Wn.2d at 785; *Larson*, 62 Wn.2d at 67.

Accordingly, we reverse and remand for proceedings consistent with this opinion.

---

[10] Typically, we must address a sufficiency of the evidence claim even when we reverse on an alternative issue. *See State v. Rogers*, 146 Wn.2d 55, 58-62, 43 P.3d 1 (2002) (holding that the court of appeals erred in not addressing the defendant's sufficiency of the evidence argument even though it reversed on an alternative basis). And in *Tilton*, our Supreme Court, despite concluding the record was insufficient for appellate review, addressed Tilton's sufficiency of the evidence argument. 149 Wn.2d at 786. *Tilton* concerned only a portion of the defendant's testimony at trial. *Id.* at 783-84. Here, in contrast, the entirety of Barnes's trial was unrecorded. Because of this, *Tilton* is distinguishable, and we conclude that we cannot review either of Barnes's convictions for sufficiency of the evidence due to the inadequacy of the ARP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, A.C.J.

We concur:

Lee, J.

Glasgow, J.