IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37894-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| JASON D. WAITS, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Jason Waits appeals his Asotin County convictions for child

molestation in the first degree and attempted child molestation in the first degree. Due to

the ongoing public health emergency, trial took place outside the county courthouse.

This change of venue resulted in a less than ideal audio recording of the trial and an

incomplete trial transcript. To facilitate reconstruction of the record, this court's

commissioner stayed the appeal and ordered appellate counsel to prepare a narrative or

agreed report of proceedings under RAP 9.3 or 9.4. Counsel for Mr. Waits moved to modify that ruling. Because this court has seen similar issues in other cases and anticipates more to come, we exercise our discretion to resolve this motion through an opinion. RAP 17.6(b); RAP 18.8(a).

FACTS

To facilitate physical distancing of court participants, the court held the trial in a larger facility than what the courthouse could provide. The transcript of jury selection indicates this was the court's second trial to occur at this location during the pandemic. The court indicated that the first trial seemed to go well, despite the current hardships. This trial did not go as well.[1]

The transcriptionist encountered substantial difficulty hearing and understanding participants during all portions of the trial. The initial trial transcript contained over 2,000 notations of "inaudible." These notations apply to the judge, the lawyers, jurors, and witnesses. After reviewing the transcript, Mr. Waits's appellate counsel asked the transcriptionist if there was any way to fill in those gaps. After reviewing the recording again, the transcriptionist was able to fill approximately 500 lacunae.

---

[1] This court has reviewed the transcripts filed from other out-of-courthouse trials that have occurred recently in Asotin County. These trials have not suffered from the same audio problems encountered here. This court may take judicial notice of nonadjudicative facts. *Cameron v. Murray*, 151 Wn. App. 646, 658-60, 214 P.3d 150 (2009).

No. 37894-2-III
*State v. Waits*

With roughly 1,500 gaps remaining, counsel filed a motion to remand the case to superior court, order appointment of another lawyer, and direct the trial court and parties to attempt to reconstruct the record. Appellate counsel also asked this court to bifurcate any trial issues from the pretrial issues raised by Mr. Waits and to have this court review and decide Mr. Waits's pretrial issues while the trial record was still being reconstructed.[2]

This court's commissioner denied Mr. Waits's motion and ordered the appeal stayed. The commissioner reasoned that remand was unnecessary because RAP 7.2(b), RAP 9.3, and RAP 9.4 grant the trial court and the parties all the authority they need to finish preparing the record. The commissioner denied bifurcation because piecemeal review is disfavored. Mr. Waits moves to modify those rulings.

ANALYSIS

This court reviews its commissioners' rulings de novo. *State v. Rolax*, 104 Wn.2d 129, 133, 702 P.2d 1185 (1985).

The Fourteenth Amendment to the United States Constitution guarantees verbatim transcription of criminal proceedings for indigent appellants at public expense in all states where state law guarantees a right to appeal. *See Eskridge v. Wash. State Bd. of Prison Terms & Paroles*, 357 U.S. 214, 78 S. Ct. 1061, 2 L. Ed. 2d 1269 (1958); *see also Draper v. Washington*, 372 U.S. 487, 83 S. Ct. 774, 9 L. Ed. 2d 899 (1963) (guaranteeing

---

[2] Counsel believes the pretrial record is adequate. Only the trial record is argued to be inadequate.

3

payment of full, not partial, transcription).  Sometimes a full verbatim transcript is not

available.  In those instances, *Eskridge* and *Draper* do not control—those cases only

mandate transcription on the same terms as would be available to nonindigent appellants.

*Draper*, 372 U.S. at 488-89, 499.

When a full verbatim transcript is not available, we look to *Mayer v. City of

Chicago*, 404 U.S. 189, 92 S. Ct. 410, 30 L. Ed. 2d 372 (1971).  *Mayer* requires a

"'record of sufficient completeness to permit proper consideration of [the appellant's]

claims.'"  *Id.* at 194 (quoting *Draper*, 372 U.S. at 499).  "A 'record of sufficient

completeness' does not translate automatically into a complete verbatim transcript."  *Id*.

"[A] State 'may find other means [than providing stenographic transcripts for] affording

adequate and effective appellate review to indigent defendants.'"  *Id*. (quoting *Griffin v.

Illinois*, 351 U.S. 12, 20, 76 S. Ct. 585, 100 L. Ed. 2d 891 (1956)); *see also Norvell v.

Illinois*, 373 U.S. 420, 83 S. Ct. 1366, 10 L. Ed. 2d 456 (1963) (court reporter passed

away and no one could read her shorthand).

In Washington, those "other means" include RAP 9.3 and RAP 9.4.  *State v.

Tilton*, 149 Wn.2d 775, 781, 72 P.3d 735 (2003); *State v. Burton*, 165 Wn. App. 866, 269

P.3d 337 (2012).  RAPs 9.3 and 9.4 govern narrative and agreed reports of proceedings,

respectively.  A narrative report of proceedings is similar to a verbatim report, except that

it is prepared by the appealing party, based on the appealing party's best recollection, and

only follows some of the content and formatting rules for verbatim reports. RAP 9.3

(incorporating RAP 9.2(e), (f)). An agreed report of proceedings is the same as a

narrative report of proceedings, except that the parties work together to create and submit

a joint report. RAP 9.4.

Thankfully, these rules are little used. This lack of use has caused some to

question whether they are dead letters. *See Wash. App. Prac. Deskbook*, § 9.6, at 9-17

(4th ed. 2016) ("narrative reports are rarely, if ever, used"). They are not dead letters.

Recently, the Washington State Supreme Court relied on a narrative report of

proceedings to find prosecutorial misconduct and grant a new trial. *State v. Loughbom*,

196 Wn.2d 64, 68 n.1, 470 P.3d 499 (2020). *Loughbom* demonstrates that RAPs 9.3 and

9.4 remain effective tools for enabling appellate review.

One of the chief reasons why these rules are still useful is because they allow the

parties to do what transcriptionists cannot: use their memories. Authorized

transcriptionists must be able to certify under penalty of perjury that their transcription is

true and correct. GR 35(e). If audio is hard to hear or understand, the transcriptionist is

not allowed to give it their best guess. Parties are also not allowed to guess. The

Washington State Supreme Court has indicated that it expects narrative and agreed

reports to be submitted in an affidavit format (i.e. sworn under penalty of perjury).

*Tilton*, 149 Wn.2d at 783. But having been present for the trial, the parties are in a

position to listen to the audio and fill gaps using their memory. Transcriptionists are also limited to verbatim reporting. RAP 9.2. RAPs 9.3 and 9.4 authorize the parties to give a "fair and accurate" nonverbatim summary of testimony and events.

Sometimes, the parties' best efforts will not be sufficient to create a record of sufficient completeness. In criminal cases where the appellant makes a good faith effort to recreate the record and is unable to do so, this court will grant a new trial. *Tilton*, 149 Wn.2d at 783 ("[W]here the affidavits are unable to produce a record which satisfactorily recounts the events material to the issues on appeal, the appellate court must order a new trial."); *see also State v. Miller*, 40 Wn. App. 483, 488, 698 P.2d 1123 (1985). Before considering a new trial, the parties must submit either an agreed or narrative report of proceedings. Upon receipt, this court will review the record as a whole and decide for itself whether the record is sufficiently complete to permit proper consideration of the appellant's claims.

With these cases and court rules in mind, we now come to counsel's arguments. Appellate counsel argues that remand is appropriate because any involvement in recreating the record would force her to violate RPC 3.3(a) due to the fact that appellate counsel does not have personal knowledge of what transpired below. But neither RAP 9.3 nor RAP 9.4 require appellate counsel to attest to facts. This court interprets the word "party" as used in RAP 9.3 to refer to the appellant, personally. The role of counsel is to

6

help the appellant prepare this document. Additionally, appellate counsel is not alone in this endeavor; RAP 15.2(g) requires trial counsel to assist appellate counsel with preparing the record. In the event that there is a dispute over the accuracy of the narrative report of proceedings, then the trial judge will resolve the dispute. RAP 9.5(c).

Rather than attesting to the accuracy of any report of proceedings, appellate counsel's role is to shepherd the process along. For example, appellate counsel can meet with the client to go over the recording and existing transcript, line by line, and see what blanks the client can fill in. Appellate counsel could then put that information together in the format required by RAP 9.3 and provide it to the client to sign. Appellate counsel can ask trial counsel and others to do the same. In civil practice, it is not uncommon for lawyers to interview their clients and others, and prepare sworn declarations for those individuals based on the information provided in the interview. Preparation of a narrative report of proceedings should proceed similarly. Again, the affidavits need only be "fair and accurate," not verbatim. RAP 9.3.

Nothing has to take place in Asotin County or be set in front of the trial court unless the State files an objection to the narrative report of proceedings. RAP 9.5(c) (objections to report of proceedings). If third parties refuse to cooperate with the effort, that may also provide cause to go before the trial court. *State v. Larson*, 62 Wn.2d 64, 68, 381 P.2d 120 (1963) (Hill, J., concurring) (discussing *Glaser v. Holdorf*, 53 Wn.2d

7

92, 94, 330 P.2d 1066 (1958)).[3] If it becomes necessary to go before the superior court, this court would expect trial counsel to represent Mr. Waits at any hearing. RAP 15.2(g). This may result in trial counsel being both a witness and an advocate; such an event will generally require disqualification unless the trial court determines that doing so would "work substantial hardship" on the client or "the court rules that the lawyer may continue to act as an advocate." RPC 3.7(a)(3), (4). That is a decision the trial court will have to make, and only if it becomes necessary to do so. If trial counsel is not available or is otherwise disqualified, this court will expect appellate counsel to represent Mr. Waits at any hearings. RAP 9.5(c) does not state that another lawyer, unfamiliar with the case, will appear before the trial court to settle the record. Involving a third lawyer would not be an efficient use of public resources and would further delay appellate review, to Mr. Waits's detriment, due to the time it would take that lawyer get acquainted with the underlying facts, the record, and the events that have transpired in two different courts.

---

[3] *Larson* was decided prior to the existence of the RAPs. At that time, the Rules of Appeal (then-abbreviated as "RA," later redesignated as "ROA") were in effect. These rules contained provisions for settling the record, but nothing comparable to RAP 9.3. At that time, the trial court had a much more active role in preparing the record on appeal. *See, e.g.*, RA 34, 36; *Glaser v. Holdorf*, 53 Wn.2d 92, 330 P.2d 1066 (1958) (discussing the prior procedure for settling the record).

This court will not order a needless duplication of efforts. For these reasons, we deny the motion to remand[4] and to appoint other counsel.

We recognize preparation of a narrative report of proceedings places a bigger burden on appellate counsel than is normally required to provide effective assistance of counsel. Therefore, it may be appropriate for counsel to weigh the case more heavily than would otherwise be called for under CrR 3.1. It may also be appropriate for the State to adjust compensation for its contracted attorneys when these extraordinary situations arise. But those are matters best dealt with outside of this opinion.

While the appellant and their lawyer are responsible for filling gaps in the record, it cannot be forgotten that the courts are responsible in the first instance for ensuring an adequate record of their proceedings. *See*, *e.g.*, RCW 2.32.050(2). In terms of best practices, anytime a court audio records a hearing or trial a member of the court's staff should periodically check the recording to ensure all participants are adequately picked

---

[4] This court is not sure what counsel means by the term "remand." To this court, "remand" indicates that this court is terminating its jurisdiction over a case and returning full authority to another court level. When a case is on appeal, the appellate court and the trial court share jurisdiction. The appellate court's jurisdiction takes primacy, but the trial court may still enter orders without this court's prior permission if authorized by RAP 7.2. RAP 7.2(b) specifies that the trial court retains authority to settle the record as provided in RAP Title 9. Thus, an order "remanding" the case is not necessary.

up on the recording.[5] Judges and court staff should be comfortable with the technology in their courtrooms and know the limitations of that technology. Judges and lawyers should be aware of how to best position or hold each courtroom's microphones so the microphones adequately pick up speakers. This court does not know what type of microphones were used in Mr. Waits's trial, but knows from personal experience that holding and speaking into a microphone does not come naturally to most people— especially when the microphone is used to record, not amplify, a person's voice. Courts and lawyers need to be prepared to help witnesses and jurors correctly use this technology.

Judges and lawyers also need to be cognizant of the fact that defective recordings affect other individuals beyond the parties to the instant case. It takes court transcriptionists substantially longer to complete transcripts where individuals are soft-spoken, share microphones, do not know how to properly use a microphone, and where the courtroom does not have a multi-channel audio recording system.[6] Washington is graced with excellent and dedicated court reporters and authorized transcriptionists.

---

[5] These problems can occur even in normal circumstances. Recently, this court heard motions concerning transcripts in an appeal from another county. That trial took place in a regular courtroom, but both lawyers' microphones were inadvertently turned off throughout much of the trial.

[6] When used properly, multi-channel audio recordings allows transcriptionists to isolate individual microphones, reducing background noise, making it easier to hear and understand soft-spoken individuals.

They perform a little-recognized role without which the appellate process would not function.  But there are not enough of them.  Many do transcription as a second job and are presently burdened with more cases than they can transcribe within a reasonable time frame.  When it takes them longer to transcribe hearings, it reduces the number of cases they can take, and results in other parties not receiving a timely appeal.  It is incumbent on trial courts and lawyers to do what they can to ease this burden.

Finally, the court denies Mr. Waits's motion to bifurcate the appeal.  This court disfavors piecemeal review.  *Minehart v. Morning Star Boys Ranch, Inc.*, 156 Wn. App. 457, 462, 232 P.3d 591 (2010).  "'Piecemeal appeals of interlocutory orders must be avoided in the interests of speedy and economical disposition of judicial business.'"  *Id*. (quoting *Maybury v. City of Seattle*, 53 Wn.2d 716, 721, 336 P.2d 878 (1959)). Aside from the presumption against piecemeal litigation, no rule prohibits this court from granting Mr. Waits's motion, nor does any rule explicitly guide our discretion in this matter.  Because Mr. Waits's motion is akin to a motion for discretionary review, which also results in piecemeal review, this court takes guidance from RAP 13.5(b),[7] particularly RAP 13.5(b)(1).  RAP 13.5(b)(1) most closely matches Mr. Waits's

---

[7] RAP 13.5(b) governs discretionary review by the Supreme Court of interlocutory decisions by the Court of Appeals.  Acceptance of review under RAP 13.5(b) results in piecemeal appellate review.  The criteria mirrors RAP 2.3(b)(1)-(3) (discretionary review of trial court decisions).

11

No. 37894-2-III
*State v. Waits*

argument for bifurcating the appeal. While Mr. Waits raises an assignment of error that would render further proceedings useless (including settlement of the record), this court does not believe the existence of the alleged error is so obvious as to merit bifurcation. This court is not prejudging Mr. Waits's assignment of error or finding it to lack merit. This court is only finding that the existence of the alleged error is not sufficiently obvious on the record before this court as to overcome the presumption against piecemeal litigation. Upon settlement of the record, counsel may deem it appropriate to file a motion for accelerated review. RAP 18.12.

CONCLUSION

The motion to modify the commissioner's ruling is denied.

_____
Siddoway, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Staab, J.

12