**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
NOVEMBER 17, 2022

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
NOVEMBER 17, 2022

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 100622-5 |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| JASON D. WAITS, | ) | |
| | ) | |
| Petitioner. | ) | Filed: November 17, 2022 |
| _____ | ) | |

MADSEN, J.—The present case concerns the constitutional consequences of a deficient trial record on appeal. Specifically, what is required of the parties in an appeal when faced with a defective or incomplete record. Pursuant to Washington's constitution, criminal defendants have the right to appeal in all cases. WASH. CONST. art. I, § 22. A criminal defendant is "'constitutionally entitled to a record of sufficient completeness to permit effective appellate review'" of their claims. *State v. Tilton*, 149 Wn.2d 775, 781, 72 P.3d 735 (2003) (internal quotation marks omitted) (quoting *State v. Thomas*, 70 Wn. App. 296, 298, 852 P.2d 1130 (1993)). A sufficiently complete record does not necessarily require "'a complete verbatim transcript.'" *Id.* (quoting *Mayer v. City of Chicago*, 404 U.S. 189, 194, 92 S. Ct. 410, 30 L. Ed. 2d 372 (1971)). Alternative

No. 100622-5

methods are permissible if they permit effective review, that is, the alternative method allows counsel to determine which issues to raise on appeal and puts before the reviewing court an equivalent report of the trial events from which the issues arise. *Id*. (quoting *State v. Jackson*, 87 Wn.2d 562, 565, 554 P.2d 1347 (1976)). Where a record is insufficient to permit effective review, a defendant receives a new trial. *Id*. at 783; *State v. Larson*, 62 Wn.2d 64, 67, 381 P.2d 120 (1963). In Washington, alternative means are outlined in our Rules of Appellate Procedure (RAP) 9.3 and 9.4. When a state, like Washington, affords the right to appeal, it cannot discriminate between criminal defendants who have the ability to pay appellate costs and those who cannot. *See Griffin v. Illinois*, 351 U.S. 12, 17-19, 76 S. Ct. 585, 100 L. Ed. 891 (1956); U.S. CONST. amend. XIV.

Because criminal defendants have the constitutional right to an appeal from a record that is sufficiently complete to permit effective appellate review, when that record is deficient, missing, or incomplete, the State is responsible for reconstructing it with the assistance of the parties. Accordingly, we reverse the Court of Appeals and remand the case to the superior court for further proceedings.

The second issue before us concerns bifurcation: specifically, whether the Court of Appeals erred in declining to separate Jason Waits' speedy trial issue from the rest of his appeal. On that issue, we affirm the Court of Appeals.

2

No. 100622-5

BACKGROUND

In August 2020, Waits was tried and convicted of child molestation and attempted child molestation, both in the first degree. The underlying facts of these conviction are not in dispute. Instead, the issues for this court's review arise from the bad acoustics of the building where the trial took place—a former church that was used to accommodate social distancing during the height of the COVID-19 pandemic.

Over the course of Waits' two-day trial, the transcription contained over 2,000 "inaudible" notations from the judge, lawyer, jurors, and witnesses. The transcriptionist was later able to fill in some of the gaps, but about 1,500 inaudibles still remain. *See* Am. Verbatim Tr. of Proc. at 36-38, 58-63, 76, 79 (examples of inaudible notations during jury selection, including entire statements made by prospective jurors, parties' questions, and court rulings on challenges for cause), 125, 139-40 (examples of inaudible court rulings on parties' objections), 188, 195, 199-200 (examples of inaudible witness testimony).

After Waits was convicted, he was found indigent and appointed appellate counsel. Appellate counsel asked the Court of Appeals to remand Waits' case to the trial court to attempt reconstruction of the record and to bifurcate Waits' already-identified speedy trial claim. Appellate counsel expressed concern that because she was not Waits' attorney at trial, she was not in a position to advise Waits on the factual accuracy of the

3

No. 100622-5

reconstruction effort and, thus, asked that the Court of Appeals direct the trial court to make defense counsel available during reconstruction.[1]

The Court of Appeals' commissioner denied the motion and stayed the appeal, concluding that the RAPs direct the trial court and parties in the proper mechanism to reconstruct the record. Nor did the commissioner appoint trial counsel, stating Waits could make that request to the trial court under RAP 7.2(b). Finally, the commissioner declined to bifurcate the appeal based on the notion that piecemeal appeals are disfavored.

Waits moved to modify the ruling. The Court of Appeals denied the motion, explaining the reconstruction process and declining to bifurcate Waits' speedy trial issue. *State v. Waits*, 20 Wn. App. 2d 800, 804-10, 502 P.3d 878 (2022). The court published its decision, noting that the reconstruction issue was likely to arise again.

Waits sought emergency review here. He objected to the Court of Appeals' reconstruction procedure. The State offered no response. At oral argument before Commissioner Michael Johnston, the State was allowed a brief comment and indicated it was not opposed to review, citing the need for definitive guidance on the process of recreating a record. Commissioner Johnston granted review. The Washington Appellate Project submitted amicus curiae briefing in support of Waits.

---

[1] The firm representing Waits on appeal states that its attorneys routinely file motions to reconstruct the record and the motions are often granted. *See* Mot. for Disc. Rev., App. B (offering seven cases where courts granted Nielsen Koch & Grannis' motions to reconstruct).

No. 100622-5

ANALYSIS

Waits primarily disagrees with the Court of Appeals' process for reconstructing the record. He contends the process unconstitutionally shifts the burden from the State and onto him. The State defends the Court of Appeals but accepts that as a practical matter, the original reconstruction "method proposed by the Appellant seems the most viable." Br. of Resp't at 4. In other words, the State disagrees with Waits on the legal issue but agrees with the remedy. While this court does not hear nonjusticiable controversies or generally give purely advisory opinions, *see To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 416, 27 P.3d 1149 (2001), the present case involves a live controversy—which party bears the burden of reconstructing a lost or damaged record in a criminal appeal—between adverse parties—the State and Waits. The parties may agree on the solution in their case, but they dispute the Court of Appeals' published decision establishing the current reconstruction rule, which is before us for review. Based on our state constitution, the federal constitution, court rules and case law, we conclude that the State must lead the record reconstruction process and that bifurcation is not warranted in this case.

1. Reconstructing the Record

As noted, our state constitution guarantees all criminal defendants—indigent as well as those with financial means—the right to an appeal. WASH. CONST. art. I, § 22. In order to pursue an effective appeal, a criminal defendant is "'constitutionally entitled to a record of sufficient completeness.'" *Tilton*, 149 Wn.2d at 781 (internal quotation marks

5

No. 100622-5

omitted) (quoting *Thomas*, 70 Wn. App. at 298).  For indigent defendants, the Fourteenth Amendment to the United States Constitution guarantees a verbatim transcription of criminal proceedings at public expense.  *See Draper v. Washington*, 372 U.S. 487, 488, 83 S. Ct. 774, 9 L. Ed. 2d 899 (1963) (citing *Griffin*, 351 U.S. at 19; *Eskridge v. Wash. State Bd. of Prison Terms and Paroles*, 357 U.S. 214, 216, 78 S. Ct. 1061, 2 L. Ed. 2d 1269 (1958)).[2]

A sufficiently complete record does not necessarily require a verbatim transcript; alternative methods are acceptable provided they permit effective appellate review. *Tilton*, 149 Wn.2d at 781 (quoting *Thomas*, 70 Wn. App. at 298; *Mayer*, 404 U.S. at 194; *Jackson*, 87 Wn.2d at 565).  Effective review allows counsel to determine which issues to raise on appeal and provides the relevant, equivalent report of the trial record where the alleged issues occurred.  *Id*.  Effective review on appeal also allows for other methods of reporting trial proceedings in instances when a trial court record is deficient or missing. *Id*.  In such circumstances, the "State 'may find other means [than providing stenographic transcripts for] affording adequate and effective appellate review to indigent defendants.'"  *Mayer*, 404 U.S. at 194 (alteration in original) (quoting *Griffin*, 351 U.S. at 20).  Alternatives include "'[a] statement of facts agreed to by both sides, a full narrative statement based perhaps on the trial judge's minutes taken during trial or on the court reporter's untranscribed notes, or a bystander's bill of exceptions might all be adequate substitutes, equally as good as a transcript.'"  *Jackson*, 87 Wn.2d at 565 (quoting *Draper*,

---

[2] The right to a verbatim report at public expense has been extended to indigent parents as well. *See M.L.B. v. S.L.J.*, 519 U.S. 102, 107, 119-20, 117 S. Ct. 555, 136 L. Ed. 2d 473 (1996).

No. 100622-5

372 U.S. at 495-96). The burden of showing that alternatives will suffice for an effective appeal rests with the State. *Mayer*, 404 U.S. at 195.

In Washington, alternatives include RAP 9.3 and 9.4. *Tilton*, 149 Wn.2d at 781. RAP 9.3 sets out the parameters for narrative reports and states,

> The party seeking review may prepare a narrative report of proceedings. A party preparing a narrative report must exercise the party's best efforts to include a fair and accurate statement of the occurrences in and evidence introduced in the trial court material to the issues on review. A narrative report should be in the same form as a verbatim report . . . . If any party prepares a verbatim report of proceedings, that report will be used as the report of proceedings for the review. A narrative report of proceedings may be prepared if the court reporter's notes or the electronic recording of the proceeding being reviewed is lost or damaged.

This form is traditionally a summary of the testimony and proceedings at trial, usually not by question and answer as would be a verbatim report. 2A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 9.1 author's cmts. at 629 (8th ed. 2014). The narrative report must be submitted to the trial judge as prescribed in RAP 9.5(b), and any party may object to the report under RAP 9.5(a). *Id*. RAP 9.3 task force cmt. at 659.

RAP 9.4 governs agreed reports of proceedings and states,

> The parties may prepare and sign an agreed report of proceedings setting forth only so many of the facts averred and proved or sought to be proved as are essential to the decision of the issues presented for review. The agreed report of proceedings must include only matters which were actually before the trial court. An agreed report of proceedings should be in the same form as a verbatim report, as provided in rule 9.2(e) and (f). An agreed report of proceedings may be prepared if the court reporter's notes or the electronic recording of the proceeding being reviewed is lost or damaged.

7

No. 100622-5

This rule was meant to allow excerpts from the verbatim report, a narrative report, or some combination of each. 2A TEGLAND, *supra*, RAP 9.4 author's cmts. at 661. The agreed report must be submitted to the trial judge under RAP 9.5(b). *Id.* task force cmt. at 662.

RAP 9.3 and 9.4 were adopted in 1976 as part of the original appellate rules. *Id.* RAP 9.3 author's cmts. at 659, 9.4 author's cmts. at 661. The rules were amended in 1993 based on concerns from the "Video Evaluation Committee" that no procedure existed to deal with a lost or damaged record, whether the record existed as a videotape or reporter's notes. *Id.* RAP 9.3 drafter's cmt. at 660, 9.4 drafter's cmt. at 662. "Adoption of both these [rules] would provide the party seeking review with two options for a substitute record if the original record is lost or destroyed." *Id.* RAP 9.3 drafter's cmt. at 660. *Washington Practice: Rules Practice* advises that in criminal cases "the rules take on constitutional overtones because the defendant has a due process right to a record that is sufficiently complete to permit review of errors raised." *Id.* RAP 9.1 author's cmts. at 630 (citing *Tilton*, 149 Wn.2d 775).

### a. Court of Appeals Reconstruction Process

The Court of Appeals in this case correctly noted that alternatives to verbatim transcriptions include RAP 9.3 and 9.4. *Waits*, 20 Wn. App. 2d at 804. These rules allow for parties to use their memories whereas transcriptionists cannot. *Id*. at 805. Yet, despite parties' best efforts, a record of sufficient completeness may not be possible. *Id*. In these cases, the reviewing court will grant a new trial. *Id.* (citing *Tilton*, 149 Wn.2d at

8

No. 100622-5

783 ("[W]here the affidavits are unable to produce a record which satisfactorily recounts the events material to the issues on appeal, the appellate court must order a new trial.")). Before applying this remedy, the parties must submit a narrative or agreed report of proceedings, and the Court of Appeals will consider the record and decide whether it is sufficiently complete to permit consideration of the appellant's claims. *Id.*

In the process of reconstruction, the Court of Appeals stated that "the appellant and their lawyer are responsible for filling gaps." *Id.* at 808. Reasoning that neither RAP 9.3 nor 9.4 requires counsel to attest to facts, the court rejected the concern of Waits' appellate counsel that she would be forced to violate RPC 3.3(a)[3] because she had no knowledge of what transpired at trial. *Id.* at 806. Instead, the Court of Appeals— seemingly for the first time—interpreted the word "party" in RAP 9.3 as referring to the appellant personally. *Id.* The court stated the role of appellate counsel is to "help the appellant prepare this document," with the assistance of trial counsel. *Id.*; RAP 15.2(g) (requiring trial counsel to assist with preparing the record). In the event of a dispute, the trial judge will resolve it. RAP 9.5(c).

According to the court, the "appellate counsel's role is to shepherd the process along." *Waits*, 20 Wn. App. 2d at 806. The court went on to list numerous ways counsel

---

[3] RPC 3.3 concerns candor toward the tribunal. Subsection (a) provides that a lawyer shall not knowingly (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer, (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client unless such disclosure is prohibited by Rule 1.6, (3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by the opposing party, or (4) offer evidence that the lawyer knows to be false. RPC 3.3(a)(1)-(4).

No. 100622-5

can do so, such as meeting with a client to go over the recording and existing transcript line-by-line to fill in blanks, with appellate counsel compiling the information into RAP 9.3's format and provide it for the client to sign. *Id.* Appellate counsel can ask trial counsel and others to do the same. *Id.* Further, the court said, none of this has to take place in Asotin County or be set in front of the trial court unless the State objects to the narrative report. *Id.* (citing RAP 9.5(c) (objections to report of proceedings)). If third parties do not cooperate, this may be cause to go before the trial court. *Id.* at 806-07. Disputes before the trial court would require the appellant to be represented by trial counsel, RAP 15.2(g), and if counsel is not available or is otherwise disqualified, the court "will expect appellate counsel to represent Mr. Waits at any hearings." *Id.* at 807.[4]

The Court of Appeals ended its decision by reaffirming that it is the trial court's responsibility in the first instance to ensure an adequate record of proceedings. *Id.* at 808 (citing RCW 2.32.050(2)). Best practice means that court staff should periodically check court audio records to make sure participants are properly recorded. The court observed that judges and lawyers should be proficient with this technology and need to be prepared to help witnesses and jurors correctly use technology. *Id.*

---

[4] The court also declined to appoint a "third lawyer" who is unfamiliar with the case to appear before the trial court to settle the record, reasoning it would be an inefficient use of public resources and delay review. Waits agrees and explains in his briefing here that he intended reappointment of trial counsel in his original motion to reconstruct the record. Opening Br. of Pet'r at 46 n.8.

10

No. 100622-5

        b.  <u>The State Bears the Responsibility of Reconstructing a Lost or Damaged
Record in a Criminal Appeal</u>

Waits contends that the federal constitution places the burden of reconstructing a

lost or damaged record on the State rather than, as the Court of Appeals held, on the

criminal appellant. We agree in part.

Our state constitution guarantees criminal defendants the right to appeal and a

sufficiently complete record from which to bring their appeals. WASH. CONST. art. I, §

22; *Tilton*, 149 Wn.2d at 781. The federal constitution expressly precludes

discriminating between defendants of means and those without when they seek to obtain

a report of proceedings. *Draper*, 372 U.S. at 488. The Supreme Court has stated that

"[i]n *all cases the duty of the State* is to provide the indigent as adequate and effective an

appellate review as that given appellants with funds," *id*. at 496 (emphasis added), and

the "*State* 'may find other means . . . [for] affording adequate and effective appellate

review to indigent defendants.'" *Mayer*, 404 U.S. at 194 (emphasis added) (quoting

*Griffin*, 351 U.S. at 20). Therefore, when a record is missing, deficient, or otherwise

incomplete, the State must provide an alternative to a transcript for all criminal

defendants appealing their convictions in this state.[5]

This constitutional duty, flowing from article I, section 22 of the Washington

Constitution and the Fourteenth Amendment, is not mentioned in our Rules of Appellate

---

[5] The practical consequences of this decision, which were of particular concern to the State at
oral argument, are not before us. To be sure, questions such as which party must pay for
reconstruction or from where to find these funds are important. But we are asked only the
narrow question of which party bears the constitutional burden to undertake record
reconstruction. Our state constitution and federal and state case law are clear that it is the State.

11

No. 100622-5

Procedure. But recognizing it creates no conflict. Title 9 RAP concerns the composition of the record on review, directs the party seeking review to arrange for the transcription and transmission of the relevant parts of the record to the reviewing court, and provides alternatives to a verbatim report of proceedings in the form of narrative or agreed reports. RAP 9.1, 9.2(a)-(b), 9.3, 9.4. Title 9 RAP is concerned less with burdening a particular party than with the composition and format of the appellate record.

The two rules that provide methods for recreating the record do not require a particular party to undertake the effort. RAP 9.3 states that "[t]he party seeking review may prepare a narrative report," and RAP 9.4 allows "[t]he parties" to prepare an agreed report. We construe court rules similar to statutes—in a way that avoids constitutional doubt. *See State v. Hoffman*, 150 Wn.2d 536, 539, 78 P.3d 1289 (2003) (citing *State v. Greenwood*, 120 Wn.2d 585, 592, 845 P.2d 971 (1993)); *State v. Blake*, 197 Wn.2d 170, 188-89, 481 P.3d 521 (2021) (citing *Utter ex rel. State v. Bldg. Indus. Ass'n of Wash.*, 182 Wn.2d 398, 434, 341 P.3d 953 (2015); *In re Pers. Restraint of Williams*, 121 Wn.2d 655, 665, 853 P.2d 444 (1993)). As previously discussed, individuals appealing criminal convictions in Washington are entitled to a record of sufficient completeness to permit effective judicial review. *Tilton*, 149 Wn.2d at 781. Supreme Court case law places the burden on the State to provide indigent defendants with alternatives to a verbatim report. *See Draper*, 372 U.S. at 488; *Mayer*, 404 U.S. at 193-94. RAP 9.3 and 9.4 govern the record reconstruction process. RAP 9.3 provides discretion for the party seeking review to prepare a narrative report, but the burden of doing so cannot constitutionally rest on a

No. 100622-5

criminal appellant.[6] *See* WASH. CONST. art. I, § 22; *Mayer*, 404 U.S. at 193-94. Reading

these rules together with the state and federal constitutional guaranties, we conclude that

when a defendant appeals their conviction and the record is lost or damaged, the State

bears the burden of reconstructing the record in a criminal appeal.[7]

While the ultimate burden rests with the State, the RAPs anticipate that parties will

work together to recreate a lost or missing record. *See, e.g.*, RAP 9.4 ("The parties may

prepare and sign an agreed report of proceedings."). If the parties disagree or encounter

problems in the course of reconstruction, their recourse is to go before the trial court. *See*

RAP 9.5(c) (a party may serve and file objections, and propose amendments to a

narrative report of proceedings or a verbatim report of proceedings, and the objections

and proposed amendments must be heard by the judge who originally presided over the

---

[6] This court made a passing statement in *Tilton* that the RAPs place "the burden of reconstructing the record . . . on the appellant." 149 Wn.2d at 782. But this statement is dicta. In *Tilton*, the prosecutor moved to reconstruct a missing record. *Id*. at 780. The trial court and prosecutor prepared affidavits based on their memories, but because defense counsel had no recollection of the defendant's testimony and no notes, he objected to the reconstruction. *Id*. at 780-81. The superior court accepted the affidavits as the reconstructed record. *Id*. at 781. Tilton appealed, arguing that the reconstructed record was insufficient for the purposes of appellate review. *Id*. *Tilton* did not interpret RAP 9.3 and 9.4 beyond noting they were appropriate rules for recreating the record. *See id.* at 781-82. Nor was the process for doing so before the court. *See Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 215, 304 P.3d 914 (2013) ("A statement is dicta when it is not necessary to the court's decision in a case").

[7] Neither the Court of Appeals nor the parties distinguish between different types of appellants. The current case concerns a *criminal* defendant appealing his judgment and sentence, not a civil party appealing a civil judgment. This distinction is critical because in the criminal process, Supreme Court case law explicitly expects the State to undertake reconstruction efforts. *Mayer*, 404 U.S. at 193-94; *see also* 2A TEGLAND, *supra*, RAP 9.1 author's cmts. at 630 (pursuant to *Tilton*, "In a criminal case . . . the [RAPs] take on constitutional overtones because the defendant has a due process right to a record that is sufficiently complete to permit review of errors raised.")). Waits does not argue, and we have found no case precluding a *civil* appellant from bearing the burden of reconstructing a damaged or lost record.

13

No. 100622-5

trial). Our case law discusses the participation of third parties in the reconstruction effort, and the third parties' refusal to cooperate provides a basis to go to the trial court. *See State v. Burton*, 165 Wn. App. 866, 882, 269 P.3d 337 (2012) (RAPs "allow for input by trial counsel for both sides and an ultimate determination of the sufficiency of the record by the judge before whom the proceedings were held."); *Larson*, 62 Wn.2d at 67-68 (Hill, J., concurring in the result) ("When necessary, the [trial] court may . . . even subpoena third parties to elicit necessary information" to reconstruct the record, with third parties including "attorneys, witnesses, jurors, court attaches, or anyone present during the trial."). In this the Court of Appeals is correct. *See Waits*, 20 Wn. App. 2d at 806-07.

Pursuant to RAP 15.2(g), appellate counsel is entitled to trial counsel's help. When that help is not provided, appellate counsel may go to the trial court to obtain a court order to secure it. While neither RAP 9.3 nor 9.4 requires an appellate attorney to attest to facts, the participation of third parties (specifically the trial attorney) counsels against the Court of Appeals' interpretation of "party" in RAP 9.3 (or 9.4) to mean appellants themselves, which could raise concerns about a criminal appellant's Fifth Amendment right against self-incrimination. *See Waits*, 20 Wn. App. 2d at 806; Opening Br. of Pet'r at 36-38 (arguing that requiring an appellant to attest to facts forces them to choose between self-incrimination or forgoing their right to appeal); *see also Britt v. North Carolina*, 404 U.S. 226, 229 n.4, 92 S. Ct. 431, 30 L. Ed. 2d 400 (1971) ("As for requiring a prisoner to rely on his memory, this Court rejected that as an alternative to a transcript in *Gardner* [*v. California*, 393 U.S. 367], 369-70, [89 S. Ct. 580, 21 L. Ed. 2d

14

No. 100622-5

601 (1969)] and *Williams* [*v. Oklahoma City*, 395 U.S. 458], 459[, 89 S. Ct. 1818, 23 L. Ed. 2d 440 (1969)].").  Instead, the appellate rules and our case law contemplate that trial counsel will be involved and attest to any facts as required.

Waits and amicus curiae Washington Appellate Project raise additional concerns with the Court of Appeals process that warrant consideration.  It goes without saying that the criminal legal system disproportionately affects the poor and people of color.  *State v. Blazina*, 182 Wn.2d 827, 836, 344 P.3d 680 (2015) (indigent offenders are disproportionately burdened by criminal legal costs); *State v. Orozco*, 19 Wn. App. 2d 367, 379 & n.5, 496 P.3d 1215 (2021) (Pennell, C.J., concurring) ("No citation to authority is necessary to support the claim that people of color are disproportionately targeted by the criminal justice system.").  For indigent appellants, such as Waits, expecting them to undertake reconstruction—to meet with an attorney and go over the recording and existing transcript line-by-line to fill in blanks, as the Court of Appeals suggested—ignores the reality of many individuals.  Many do not read or speak English; many have intellectual or mental disabilities or are in active physical or mental health crises that may prevent them from remembering what happened at trial; many appellants are unhoused, struggling with addiction, or simply lack reliable means of communication or access to technology.  Opening Br. of Pet'r at 43-44; Br. of Amicus Curiae Wash. App. Project (Feb. 14, 2022) at 12-13.  Those being held by the Department of Corrections are under strict protocols for accessing technology, may not want or be able to hold on to legal materials, not to mention the ongoing and volatile nature of the

15

No. 100622-5

COVID-19 pandemic that can restrict attorneys' contact with their clients regardless of whether they are in or out of custody.[8]

Such problems can be avoided by returning to the fundamental principle guaranteed by our state constitution and Supreme Court case law: criminal defendants in Washington are entitled to a sufficiently complete record from which to exercise their right to appeal and, for indigent appellants specifically, the State bears the burden of providing other means than a verbatim transcript of affording adequate and effective appellate review. *Tilton*, 149 Wn.2d at 781; *Mayer*, 404 U.S. at 194.

This is not to say that the appellant should not be involved in the process. Waits agrees that appellants play a critical role in reconstructing the record and "case law makes clear it should be a collaborative" approach. Opening Br. of Pet'r at 32. In *Tilton*, the court explained that in most instances, "an adequate narrative can be constructed by the attorneys, witnesses, jurors, court attachés or anyone present during the trial." 149 Wn.2d at 785. Indeed, Waits' original motion to reconstruct the record indicated he would be involved with the assistance of his trial attorney. The Court of Appeals itself

---

[8] Amicus Washington Appellate Project goes further than Waits and contends that even parties' notes or parties' memories would not create an adequate reconstructed record. For example, the notes and memories of jury voir dire "would never be able to capture the detail of a simultaneous report of proceedings which is necessary for appellate counsel to identify errors that went unnoticed by the parties below." Br. of Amicus Curiae Wash. App. Project (Apr. 29, 2022) at 16. We recently heard arguments in *State v. Tesfasilasye*, No. 100166-5 (Wash. Oct. 6, 2022), http://www.courts.wa.gov/opinions/pdf/1001665.pdf, regarding GR 37 and whether race could be seen as a reason a juror was peremptorily struck from the venire. Review of this case involved a granular examination of juror statements for which a transcript was critically important. It is hard to imagine that a narrative or agreed report would be sufficient to allow such a case to come before appellant review. But this issue, like that raised by amicus, is not before us. Concerns about the sufficiency of the reconstructed record are a separate inquiry from the process of reconstruction. *See Tilton*, 149 Wn.2d at 783.

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 100622-5

observed that the RAPs "allow for input by trial counsel for both sides and an ultimate determination of the sufficiency of the record by the judge before whom the proceedings were held." *Burton*, 165 Wn. App. at 882.

The State urges us to affirm the Court of Appeals' holding that the appealing party must lead the reconstruction process based on RAP 9.2(a) and "logic and reason as well." Br. of Resp't at 3. As previously stated, RAP 9.2 directs the party seeking review to arrange for transcription and transmission of the record to the appellate court. RAP 9.2(a)-(b). But the State does not discuss *Mayer*, which explicitly requires the State to provide alternatives to a verbatim record, such as reconstructing a record under RAP 9.3 and 9.4. The State goes on to argue that as a matter of logic

> [t]he party seeking review knows where they intend to focus their attack on the proceedings below. If the central focus is on the ruling in a pretrial hearing, then certainly the record of that hearing would be provided . . . plac[ing] the burden on the trial court or the "state" would mean that the record of every single hearing would have to be provided, and this is simply not practical.

Br. of Resp't at 3-4. We reject this argument. First, it assumes the conclusion that appellate attorneys (who are almost always different from trial counsel) will know on what portions of the record to focus their attention, ignoring completely that an adequate record is first necessary for an appellate attorney to identify any such issues for appellate review. Next, it is not inevitable that placing the burden where it constitutionally belongs (on the State) will result in a record for every single hearing. A verbatim report of proceedings generally allows an appellate attorney to review the entire record (of every hearing), identify issues, and transmit those relevant portions of the record to the

17

No. 100622-5

reviewing court. When a verbatim report is unavailable and an alternative is necessary, a narrative or agreed report of every hearing *may* be necessary in order to provide an indigent defendant with a record of sufficient completeness to allow for adequate and effective appellate review. *Mayer*, 404 U.S. at 194.

Regarding the remedy, the State concedes that Waits' originally proposed process is "the most viable." Br. of Resp't at 4. We therefore remand the case to the trial court for the parties to attempt reconstruction, with the State undertaking its constitutional duty to lead the effort and recourse to the trial court if the parties disagree or third parties are reluctant to participate as required by the RAPs and our case law.

2. Bifurcation

Waits also claims that the Court of Appeals erred in denying his motion to bifurcate the speedy trial issue. The State contends bifurcation is not merited and urges us to affirm the court. Both parties agree that abuse of discretion is the proper standard of review.

After his trial, Waits filed a pro se motion to dismiss his convictions based on an alleged speedy trial violation. The trial court denied the motion to dismiss, noting that defense counsel requested at least seven continuances that resulted in a trial date being struck or continuances of trial scheduling hearings.

In the Court of Appeals, Waits briefed the speedy trial claim separately in the hope that it would be reviewed separately. He argued that CrR 3.3(f)(2) requires the trial court to set a "specified date" for trial when granting a continuance and that CrR 3.3(d)(2)

18

No. 100622-5

requires the court to "set a new date for trial" when trial must be reset for any reason. Br. of Appellant at 7 (Wash. Ct. App. No. 37894-2-III (2021)). Waits claimed the trial court failed to comply with the rule when it granted continuances without resetting the date for trial; there was no valid excluded period, and the time for trial expired on August 2, 2019. Waits objected on August 5, in time to cure the issue, but he was ignored. Thus, Waits argued, the trial date set after August 5 exceeded the speedy trial limits set out in CrR 3.3(h), requiring dismissal with prejudice.

The Court of Appeals denied bifurcation based on the notion that piecemeal review is disfavored. *Waits*, 20 Wn. App. 2d at 809 (citing *Minehart v. Morning Star Boys Ranch, Inc.*, 156 Wn. App. 457, 462, 232 P.3d 591 (2010)). "'Piecemeal appeals of interlocutory orders must be avoided in the interests of speedy and economical disposition of judicial business.'" *Minehart*, 156 Wn. App. at 462 (quoting *Maybury v. City of Seattle*, 53 Wn.2d 716, 721, 336 P.2d 878 (1959)). The Court of Appeals recognized that aside from the presumption against piecemeal litigation, no rule prohibited it from granting Waits' motion and no rule explicitly guided its discretion. *Waits*, 20 Wn. App. 2d at 809. The court therefore looked to RAP 13.5(b), which governs discretionary review by the Supreme Court of interlocutory decisions by the Court of Appeals. Acceptance of review under RAP 13.5(b) results in piecemeal appellate review. The criteria mirror RAP 2.3(b)(1)-(3), concerning discretionary review of trial court decisions. *Id.* at n.7. Although Waits' error would render further proceedings useless (speedy trial violation requires dismissal), the Court of Appeals was

19

No. 100622-5

not persuaded that his claimed error was "so obvious as to merit bifurcation" to overcome the presumption against piecemeal litigation. *Id*. at 810.

Waits contends here that the Court of Appeals' reliance on *Minehart* is inapposite. That case, Waits notes, concerned interlocutory review of a pretrial ruling when the underlying case had not been settled. Waits' trial, on the other hand, is over, and he has already experienced significant delay in litigating the record reconstruction issue. The State counters that Waits offers no authority "reject[ing] the bedrock of the *Minehart* ruling: that bifurcation of appeals is disfavored." Br. of Resp't at 5.

RAP 13.5 concerns this court's review of an interlocutory decision from the Supreme Court and piecemeal appeals. It is reasonable that the Court of Appeals looked to this rule for guidance. Further, while *Minehart* concerns piecemeal *litigation* rather than appeals, its underlying policy (preserving judicial resources and efficiency) is applicable here: even granting bifurcation, the speedy trial issue may not be meritorious and if the reconstruction effort yields additional appellate issues, the Court of Appeals (and maybe this court) will have expended more resources considering the issues individually than simply waiting for the reconstruction effort to conclude and reviewing the issues all together.

Waits also disagrees with the Court of Appeals' assessment of the speedy trial error. He argues that CrR 3.3 requires a new date for trial to be set and a resetting hearing does not suffice. But, as the Court of Appeals observed, whether resetting trial hearings does or does not comply with CrR 3.3's "specific trial date" language is not

20

No. 100622-5

obvious in light of the multiple continuances granted to defense. Next, Waits claims that he has already had to wait for appellate review and excessive delay can violate due process. *Coe v. Thurman*, 922 F.2d 528, 530-31 (9th Cir. 1990). In *Coe*, the Ninth Circuit Court of Appeals reviewed factors that dealt with speedy trials and "transposed the delayed trial factors" to appeals. *Id.* at 531. These factors include length of delay, reason for delay, defendant's assertion of their right, and prejudice to the defendant. *Id.* (quoting *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)).

Waits offers similar factors as guides for whether "to grant a bifurcation request when the interests of justice require." Opening Br. of Pet'r at 51; RAP 1.2(a). He suggests the following: is there a factor not caused by the appellant that will significantly delay the appeal, will the bifurcated issue be dispositive, is the issue purely legal that will not require remand for further fact-finding, and potentially whether the opposing party objected or will suffer prejudice from the bifurcation. Waits claims he meets all the factors of his proposed test: if the speedy trial issue is successful, recreation efforts would be unnecessary because the remedy is dismissal with prejudice; but if reconstruction is not successful and the record is inadequate for appellate review, then Waits will receive only a new trial. The State did not object to bifurcation and will need to respond to the speedy trial claim eventually. Resolution of that sole issue could prevent unnecessary work on the State's part.

Waits proposes a thoughtful test but offers no controlling or persuasive authority for why his test should be adopted. RAP 1.2(a), on which Waits relies, explains that we

21

No. 100622-5

will liberally interpret the appellate procedural rules to promote justice and facilitate decisions on the merits. But there is no indication that Waits will not receive justice or that his case will not be decided on the merits. His strongest argument appears to be that his appeal has been delayed, which could rise to the level of a due process violation. *Coe*, 922 F.2d at 530-31. But Waits does not argue this point.[9] Moreover, reconstruction of the record in Waits' case could take some months, but additional issues may come to light, and it would save judicial time and resources in considering all the issues raised together. At this point, it is unknown what the reconstructed record may yield or whether it will be sufficient for appellate counsel to identify issues, which appellate counsel would need to argue in the Court of Appeals.

Ultimately, Waits does not show that his situation is an extraordinary one meriting waiver of the RAPs or that his speedy trial error is so obvious to order the Court of Appeals to bifurcate his appeal. Like the Court of Appeals said, this is not a prejudgment of Waits' speedy trial issue on the merits but a procedural decision, though the court did note that the claimed error is not obvious. And, though Waits has had to wait some time for appellate review, this period is not so long as to violate due process. Accordingly,

---

[9] Nor does it appear Waits could successfully do so. *Coe* reviewed cases of substantial appellate delay. Coe filed a notice of appeal in 1987 and the case was submitted to the Ninth Circuit over three years later. Other cases finding due process violations involved delays of three, three-and-a-half, five, six, and eight years. *Coe*, 922 F.3d at 530 (citing cases from the Second Circuit). Waits' trial occurred over two days in August 2020; he filed a notice of appeal on December 8, 2020. The Court of Appeals denied Waits' motion to modify in January 2022, and oral argument in this court occurred five months later in June 2022. In total, Waits has waited approximately a year-and-a-half to receive appellate review. This is not an insubstantial delay, but it is far from that held to violate federal due process as outlined in *Coe*.

22

No. 100622-5

Waits fails to show the Court of Appeals abused its discretion in denying bifurcation. We therefore affirm the Court of Appeals.

CONCLUSION

This case asks us to clarify which party must lead a record reconstruction effort in criminal appeals. Article I, section 22 of our state constitution guarantees criminal defendants the right to appeal, and this court has held that to permit effective appellate review, criminal defendants are constitutionally entitled to a record of sufficient completeness. *See Tilton*, 149 Wn.2d at 781. Alternative methods to a verbatim report of proceedings are allowed provided they permit effective review. *Id.* For indigent defendants in particular, the federal constitution precludes discriminating between financially able appellants and indigent ones when seeking to obtain trial court records. *See Draper*, 372 U.S. at 488; *Mayer*, 404 U.S. at 193-94. These authorities, together with our relevant appellate rules in RAP 9.3 and 9.4, make clear that it is the State's responsibility to reconstruct a lost or damaged record in criminal appeals. Therefore, we reverse the Court of Appeals' holding that it is the responsibility of Waits and his attorney to reconstruct the record. We remand this case to the superior court for further proceedings.

Regarding bifurcation, Waits fails to show the Court of Appeals abused its discretion in declining to separate his speedy trial issue from the rest of his appeal. We affirm the Court of Appeals' decision not to bifurcate Waits' appeal.

23

No. 100622-5

_____
Madsen, J.

WE CONCUR:

_____
                                                            Gordon McCloud, J.

_____
Johnson, J.

_____

_____
Owens, J.

_____
Whitener, J.

_____
Stephens, J.

_____
Larsen, J.P.T.

*State v. Waits*, No. 100622-5
(Yu, J., concurring)

No. 100622-5

YU, J. (concurring) — I agree with the majority in concluding that when the "record is deficient, missing, or incomplete, *the State is responsible* for reconstructing it with the assistance of the parties." Majority at 2 (emphasis added). However, it ought to be clear that when allocating the costs of reconstruction, "*the State*" does not mean the local prosecutor. The majority makes light of the practical consequences of who pays, an issue that was raised at oral argument, but there are significant practical consequences for local city and county governmental entities. *See* majority at 11 n.5; *State v. Waits*, No. 100622-5 (June 14, 2022), at 14 min., 55 sec.; 33 min., 08 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org/video/washington-state-Supreme-court-2022061139/?eventID=2022. We should provide clear guidance on this issue.

The "'right to a record'" on appeal is, in large part, a matter of state constitutional law because "[u]nlike the federal constitution, the Washington

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Waits*, No. 100622-5
(Yu, J., concurring)

Constitution also guarantees criminal defendants the right to an appeal." Majority at 8 (quoting 2A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 9.1 author's cmts. at 630 (8th ed. 2014)); *State v. Cruz-Yon*, 20 Wn. App. 2d 1, 5, 498 P.3d 533 (2021) (citing CONST. art. I, § 22; *State v. Atteberry*, 87 Wn.2d 556, 558 n.2, 554 P.2d 1053 (1976)). We should be clear that the cost of this state constitutional right is one that the state government, not local governments, must bear. Indeed, "[i]t is well established that '[*t*]*he State* must provide indigent criminal defendants with means of presenting their contentions on appeal which are as good as those available to nonindigent defendants with similar contentions.'" *State v. Harvey*, 175 Wn.2d 919, 921, 288 P.3d 1111 (2012) (second alteration in original) (emphasis added) (quoting *State v. Giles*, 148 Wn.2d 449, 450, 60 P.3d 1208 (2003)). "This includes a record of sufficient completeness to permit proper consideration of the defendant's claims." *Giles*, 148 Wn.2d at 450; *see also Cruz-Yon*, 20 Wn. App. 2d 1 (translation of the record to be paid at public expense).

Therefore, "the State is responsible" should be read to mean that the costs of record reconstruction must be paid at public expense by the state government. Moreover, to allow for an expedited process, courts should promptly approve the costs when reconstruction pursuant to RAP 9.3 and 9.4 is deemed necessary. For this reason, I respectfully concur.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Waits*, No. 100622-5
(Yu, J., concurring)

_____
Yu, J.

_____
González, C.J.